1  Rosemary M. Rivas (State Bar No. 209147)
   rrivas@finkelsteinthompson.com
2  **FINKELSTEIN THOMPSON LLP**
   One California Street, Suite 900
3  San Francisco, California 94111
4  Telephone: (415) 398-8700
   Facsimile: (415) 398-8704
5

6  Michael G. McLellan (*pro hac vice* forthcoming)
   mmclellan@finkelsteinthompson.com
7  **FINKELSTEIN THOMPSON LLP**
8  1077 30th Street NW, Suite 150
   Washington DC, 20007
9  Telephone: (202) 337-8000
   Facsimile: (202) 337-8090
10

11 *Counsel For Plaintiff Rick Musgrave*
12

13            **UNITED STATES DISTRICT COURT**
14
            **SOUTHERN DISTRICT OF CALIFORNIA**
15

16 RICK MUSGRAVE, individually, and on        | Case No. **'15 CV 2012 BAS RBB**
   behalf of himself and all others similarly
17 situated,                                    **CLASS ACTION COMPLAINT**

18              Plaintiff,                       **JURY TRIAL DEMANDED**

19       v.
20
   BUMBLE BEE FOODS LLC,
21 STARKIST COMPANY,
   TRI-UNION SEAFOODS LLC, and
22 KING OSCAR, INC.
23
                Defendants.
24

25

26

27

28

                   CLASS ACTION COMPLAINT

**NATURE OF THE ACTION**

1.      This class action challenges, as *per se* illegal, a conspiracy by the three largest producers of packaged seafood products in the United States – Bumble Bee Foods LLC, StarKist Company, Tri-Union Seafoods LLC, and King Oscar, Inc. (collectively, "Defendants") to fix, raise, maintain, and/or stabilize prices for packaged seafood products in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3) and state antitrust, consumer protection and unfair competition statutes from at least January 1, 2005 to the present (the "Class Period"), and ongoing.  As used herein, the term "packaged seafood products" refers to shelf-stable seafood products that are sold in cans, pouches or ready-to-eat serving packages.

**JURISDICTION AND VENUE**

2.      Plaintiff brings this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain equitable and injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. § 1).  The court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims that arise under federal law and under 28 U.S.C. § 1337 for federal antitrust claims in particular.  Plaintiff also asserts claims for damages, to seek restitution, and secure other relief, under state antitrust, unfair competition, consumer protection and unjust enrichment laws.

3.      The Court additionally has subject matter jurisdiction over these state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

4.      This court further has subject matter jurisdiction over the state law claims by virtue of the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, "any member of a class of Plaintiff is a citizen of a state different from any Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."  The $5 million amount-in-controversy and diverse-citizenship requirements of CAFA are satisfied

in this case.

5. Under 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and (d), this district has venue over the action, for Defendants resided, transacted business, were found, and/or had agents in this District, and this District was the situs of a substantial portion of the affected interstate trade and commerce discussed herein during the Class Period.

6. Each Defendant is subject to personal jurisdiction before this Court because, among other reasons, each of them (a) transacted business, (b) sold and/or distributed packaged seafood products, (c) maintained substantial contacts, and/or (d) engaged in an illegal and anticompetitive concerted action with respect to packaged seafood products throughout the United States and in this District.   The jointly agreed upon scheme had the intended effect of injuring persons residing in, located in, or doing business throughout the United States, including in the Southern District of California.  By artificially producing supracompetitive prices, the scheme restrained trade unreasonably and negatively affected the market for packaged seafood products, harming persons throughout the United States and this District who purchased packaged seafood products for personal use and not for resale, including Plaintiff and members of the Classes.

**PLAINTIFF**

7. Plaintiff Rick Musgrave is a current resident of the State of California. During the Class Period, Plaintiff indirectly purchased packaged seafood products for his own use and not for resale from one of more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

**DEFENDANTS**

8. Defendant Bumble Bee Foods LLC ("Bumble Bee") is a domestic corporation with its principal place of business located at 280 10th Avenue, San Diego, CA 92101.  Bumble Bee produces and sells packaged seafood products throughout the United States (including this District), its territories and the District of Columbia.  Bumble Bee is privately owned by Lion Capital ("Lion"), based in

1

**CLASS ACTION COMPLAINT**

the United Kingdom.

9.      Defendant StarKist Company ("StarKist") is a domestic corporation with its headquarters at 225 North Shore Drive, Suite 400, Pittsburgh, PA 15212. StarKist produces and sells packaged seafood products throughout the United States (including this District), its territories and the District of Columbia.  StarKist is privately owned by Dongwon Enterprise ("Dongwon"), based in South Korea.

10.     Defendant Tri-Union Seafoods LLC is a domestic corporation with its principal place of business located at 9330 Scranton Road, Suite 500, San Diego, CA 92121.  Tri-Union Seafoods LLC produces and sells packaged seafood products throughout the United States (including this District), its territories and the District of Columbia, and markets these products under the brand name Chicken of the Sea.  Unless otherwise indicated, Tri-Union Foods LLC will be referred to herein as "Chicken of the Sea."

11.     Defendant King Oscar, Inc. ("King Oscar") is a domestic corporation with its principal place of business at 3838 Camino Del Rio North, Suite 115, San Diego, CA 92108.  King Oscar produces and sells packaged seafood products throughout the United States (including this District), its territories and the District of Columbia.

12.     Defendants Chicken of the Sea and King Oscar (together, "Tri-Union") are wholly owned by Thai Union Frozen Products, a public company headquartered in Thailand.

## UNNAMED CO-CONSPIRATORS

13.     Various other persons, firms, and corporations, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the violations alleged herein and have performed acts and made statements in furtherance thereof.

## AGENTS

14.     The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective

2

CLASS ACTION COMPLAINT

officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

15.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

### INTERSTATE TRADE AND COMMERCE

16.    The activities of Defendants, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce and had a direct, substantial and reasonably foreseeable effect upon commerce in the United States, its territories and the District of Columbia. Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of packaged seafood products in interstate commerce between and among offices of Defendants and their customers located throughout the United States, its territories and the District of Columbia.

17.    Throughout the Class Period, Defendants transported substantial amounts of packaged seafood products in a continuous and uninterrupted flow of interstate commerce throughout the United States, its territories and the District of Columbia.

### FACTUAL ALLEGATIONS

**A.    Overview of the Packaged Seafood Product Industry.**

18.    Packaged seafood products are pre-cooked, shelf-stable seafood sold primarily in cans or pouches.

19.    The process for creating packaged seafood products begins when raw seafood is delivered to canneries, who then cook and package the seafood in hermetically sealed containers.  They typically have a shelf life of one to five years.

20.    Each package is affixed with a permanent production code identifying plant, product, date packed, batch, and other information.

21.    Packaged seafood products are sold to club warehouses, retail

3

CLASS ACTION COMPLAINT

groceries, grocery cooperatives, mass merchandisers, and drug stores, among others.

22.     Mintel Group Ltd., a Chicago-based market research firm, reports that total sales of shelf-stable seafood products in the United States in 2014 was approximately $2.5 billion.

23.     Defendants are the three largest domestic manufacturers of packaged seafood products, which is a highly concentrated industry.   In June 2013, the Bangkok Post reported that Chicken of the Sea's market share in the US shelf-stable seafood market was 18.7%, while Bumble Bee had 26% and StarKist had 26%.  In July of 2014, Youssef Abboud, an analyst covering with UBS, estimated Starkist's share of the US canned tuna market at 36%, Bumble Bee's at 25% and Chicken of the Sea's at 20%.  The remainder of the market primarily consists of "private label," i.e. "store brand" products.

24.     This oligopolistic structure within the industry is the result of recent mergers and acquisitions.  For example, in 1997, Van Camp Seafood Company ("Van Camp") was acquired by the investment group Tri-Union Seafoods LLC, of which Thai Union Frozen Products was a member.  Thereafter, Thai Union Frozen Products bought out the other investors to acquire Van Camp completely, which it renamed Chicken of the Sea International, an entity that was later merged into Tri-Union Seafoods LLC.  In 2008, Dongwon acquired StarKist from Del Monte Foods for $363 million.  Similarly, in 2014, Thai Union Frozen Products bought King Oscar, a Norwegian sardine canner that sold 37% of its products in the United States.  And in December of 2014, Thai Union Frozen Products announced the acquisition from Lion (subject to regulatory approval) of Bumble Bee for $1.51 billion.  The combination of Chicken of the Sea and Bumble Bee would have created a virtual duopoly, with the combined entity substantially exceeding the market share of StarKist.

**B.     The Department of Justice Investigation.**

25.     The antitrust division of the United States Department of Justice

4

("DOJ") is investigating anticompetitive practices in the United States packaged seafood products industry, and DOJ has convened a grand jury. Two of the three largest United States packaged seafood product manufacturers, Tri-Union and Bumble Bee, have publicly confirmed receipt of grand jury subpoenas.

26. On July 23, 2015, while announcing it had suspended a preferential public offering, Thai Union Frozen Products disclosed that both Bumble Bee and Chicken of the Sea had received grand jury subpoenas relating to an antitrust investigation of packaged seafood products. Thai Union chairman Kraisorn Chansiri reportedly confirmed the DOJ investigation in a letter to the Bangkok stock exchange, and stated Tri-Union Seafoods had received a subpoena "requiring Tri-Union to provide relevant information to the DOJ in relation to an antitrust investigation of the packaged seafood industry in the United States." The publication Undercurrent News further reported in an article dated that same day that "Thai Union held a conference with analysts on the suspension of the share offer, in which the company's management said other US seafood producers have also received a subpoena requiring the production of relevant information to the DOJ."

27. The publication Global Competition Review stated that:

An industry expert said the subpoena does not appear to be limited to the merger review, and early information indicates the demand for information came from a separate section of the antitrust division, not one tasked with analyzing deals.

It is highly likely that something produced in the merger investigation sparked this investigation touching the industry as a whole rather than just the parties to the deal, he said.

****

The source said others in the industry are now anticipating that they too will be subpoenaed….

28. These statements plausibly suggest that StarKist received a subpoena

5

CLASS ACTION COMPLAINT

as well and that the DOJ's investigation extends to the entire domestic packaged seafood products sector.

29.     It is significant that these companies received subpoenas from a federal grand jury, as is reflected in Chapter 3 of the 2014 edition of the DOJ's Antitrust Division Manual, available at http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf. Section F.1 of that chapter notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." *Id.* at III-82. The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division." Id. "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id.* at III-83. "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were made or where conspiratorial communications occurred." *Id.*

C.     **The Structure and Characteristics of the Packaged Seafood Product Market Render the Conspiracy Plausible**

30.     The structure and characteristics of the Packaged Seafood market in the United States are conducive to a price-fixing agreement.

a.  **Packaged Seafood Products are Commodity Products**

31.     Packaged seafood products are commodity products that do not differ significantly from one manufacturer to the next, and consumers can easily substitute one manufacturers' products for another.  The various varieties have similar shelf life, contain similar amounts of seafood, and are marketed in cans, pouches, and cups. Therefore, purchasers of packaged seafood products are more likely to be influenced by price when making a purchasing decision, creating

6

downward pressure on price as manufacturers compete to maintain market share. Such markets create substantial incentives to form a cartel.

### b. There Exist Significant Barriers to Entry in the Packaged Seafood Products Market

32.     Under basic economic principles, cartels that raise prices to supra-competitive levels would, in the ordinary course, attract new entrants in search of the supra-competitive profits that result from supra-competitive prices.  Left unchecked, that process would result in steadily increasing supply exerting downward pressure on prices, ultimately driving them back to competitive levels. Where high barriers to entry exist, however, new entrants are less likely to enter the market or are dissuaded from entering it altogether.  Thus, barriers to entry facilitate the formation and maintenance of cartels.

33.     There are substantial barriers that preclude, or reduce, entry into the packaged seafood product market, including high start-up costs, manufacturing expertise, access to raw materials, and access to distribution channels. Therefore, Defendants could collectively raise prices without fear of being undercut by new entrants.

### c. The Packaged Seafood Product Market is Highly Concentrated

34.     Basic industrial organization economics teaches that higher levels of concentration foster the formation and operation of cartels by reducing the number of firms needed to agree to fix prices and which must be monitored to maintain a cartel.  Purchasers routinely source their packaged seafood products from one of the three Defendants and, as described above, Defendants dominate the United States packaged seafood products market.

35.     Defendants possessed significant market power to raise prices for packaged seafood products above competitive levels in the United States.

### d. No Economically Reasonable Alternatives

36.     There are no economically reasonable substitutes for packaged

7

CLASS ACTION COMPLAINT

seafood products. Alternative seafood, such as frozen seafood or fresh seafood, do not have commensurate shelf lives and require preparation, such as cooking, before they can be consumed.

### e. Economic Indications Suggest Collusive Pricing Within The Domestic Packaged Seafood Products Industry.

37. Consumption of packaged seafood products, particularly canned tuna, has declined over the last ten years in the United States.  The annual consumption per person was 3.1 lbs. in 2005, but had fallen to 2.3 lbs. in 2013.  However, the average price per carton of canned tuna has increased from just over $15 to roughly $40 in the same period.

38. Raw material costs do not adequately explain these price increases. While the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it declined precipitously thereafter. According to the April 19, 2015 issue of Tuna Market Intelligence, "[a]s recently as June last year, skipjack was selling at US$1,800 in Bangkok.  But the price has since plummeted to US$1,000 since the beginning of the year, with industry officials anticipating further reductions in price this year." Tuna exporters in Ecuador noted in January of 2015 that the price per metric ton had declined from $1,400 to $800.  And the United Nations Food & Agriculture Organization noted in its May 2015 "Food Outlook" biannual report that tuna prices had dropped considerably in 2014: "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite these drastically declining raw material costs, Defendants did not decrease prices and try to obtain more market share.

39. Thai Union Frozen Products' Annual Reports discuss this situation. In its 2013 Annual Report, Thai Union Frozen Products stated that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe *and more rational market competition in the US*." (Emphasis added).  It stated in the same report that its future profit margins would depend upon "[r]easonable US canned tuna competition without unnecessary price." (Emphasis

8

### CLASS ACTION COMPLAINT

added). In its 2014 Annual Report, Thai Union Frozen Products explicitly noted that this goal had been achieved.  It stated:

> Thanks to *reduced price competition* (absence of cut throat pricing) and generally lower fish Chicken of the Sea, our own tuna brands marked a great year of increased profitability.  Despite minimal sales growth in the US, competitive inventory cost and reasonable market conditions helped lift the margin of our US brand. (Emphases added).

40.    The same report went on to note that "*sensible market competition*, supported by lower raw material costs, made it possible for our own tuna brands to expand their margins through the year despite limited volume growth."  (Emphasis added).  It indicated that future revenue growth would again be dependent upon "*[r]easonable US canned tuna market* competition that focuses more on consumption creation than market share alone." (Emphasis added). The "reasonable market conditions," "more rational market competition," "sensible market competition," avoidance of battles for market share and "absence of cut throat pricing" that the reports note could only have come about through collusion. It would have been against the individual self-interest of each Defendant to eschew increasing market share during this period by lowering prices.

### f.  Opportunities to Collude

41.    There were numerous business opportunities for Defendants to meet and engage in such collusion. One such opportunity is provided by the Tuna Council.  As explained on that organization's website:

> The National Fisheries Institute's Tuna Council represents the largest processors and household names for canned and pouch tuna in the U.S. including Bumble Bee®, Chicken of the Sea® and StarKist®. The Tuna Council speaks for the tuna industry on numerous issues including food safety, labeling, sustainability, nutrition education and product marketing.

42.    An example of such joint conduct is provided by the "Tuna the Wonderfish" advertising campaign of 2011-12.  This campaign was bankrolled by

9

CLASS ACTION COMPLAINT

the Defendants and carried out under the auspices of the Tuna Council with the support of Thai processors.  In it, the Defendants teamed up for marketing purposes.  Joe Tuza, Senior Vice-President of Marketing for StarKist, reportedly said that "[w]e worked together surprisingly well."  He said further that the campaign, intended to increase consumption of tuna, was based on the hope that "as the water level rises…all boats rise with the tide," referring to the three Defendant companies.  The same philosophy appears to undergird the alleged price-fixing conspiracy.

43.     Another opportunity to collude was provided through bilateral copacking agreements between Bumble Bee and Chicken of the Sea.  Bumble Bee copacks for Chicken of the Sea at the former's plant located in Santa Fe Springs, California with respect to West Coast sales. Chicken of the Sea does the same for Bumble Bee at the former's plant in Georgia with respect to East Coast sales. Thus, even before the proposed merger, these two companies were cooperating closely. These interlocking relationships provided an excellent opportunity to collude on pricing.

### D.   Plaintiff Suffered Antitrust Injury.

44.     Defendants' conspiracy had the following effects, among others:

a.     Price competition has been restrained or eliminated with respect to packaged seafood products; and

b.     The prices of packaged seafood products have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

c.     Indirect purchasers of packaged seafood products have been deprived of the benefits of free and open competition.

45.     During the class period, Defendants charged supra-competitive prices for packaged seafood products sold to Plaintiff. By reason of Defendants' alleged violations of the antitrust laws, Plaintiff and the Classes have sustained injury, having paid higher prices for packaged seafood products than they would have paid absent Defendants' alleged illegal contract, combination or conspiracy, and,

10

1  as a result, have suffered damages in an amount to be determined.  This is an
2  antitrust injury of the type the antitrust laws were meant to punish and prevent.

3       46.    Packaged seafood products are identifiable, discrete products that
4  remain unchanged from the point at which they are sold by Defendants until they
5  reach Plaintiff and the Classes. Packaged seafood products follow a traceable
6  physical chain of distribution from Defendants to Plaintiff and the members of the
7  Classes, and price and cost changes attributable to Defendants' price-fixing
8  conspiracy can be traced through the chain of distribution to Plaintiff and the
9  members of the Classes.

10       47.    Just as packaged seafood products can be physically traced through
11  the supply chain, so can their price be traced to show that changes in the prices
12  paid by direct purchasers of packaged seafood products affect prices paid by the
13  indirect purchasers of packaged seafood products in the chain of distribution.

14       48.    The economic necessity of passing through cost changes increases
15  with the degree of competition a firm faces.  The wholesale, distributor, club
16  warehouse, retail grocery, grocery cooperative, mass merchandiser and drug store
17  market for packaged seafood products are subject to vigorous price competition.
18  The aforementioned market participants have thin net margins, and are therefore at
19  the mercy of their product costs, such that increases in the price of packaged
20  seafood products lead to corresponding increases in prices to their customers.
21  When downstream distribution markets are highly competitive, as they are in the
22  case of packaged seafood products, overcharges are passed through to ultimate
23  consumers, such as the indirect-purchaser Plaintiff and members of the Classes.

24       49.    Hence the inflated prices of packaged seafood products resulting from
25  Defendants' price-fixing conspiracy have been passed on to Plaintiff and the other
26  members of the Classes by wholesalers, distributors and retailers.

27       50.    Two antitrust scholars – Professors Robert G. Harris (Professor
28  Emeritus and former Chair of the Business and Public Policy Group at the Haas
   School of Business at the University of California at Berkeley) and the late

CLASS ACTION COMPLAINT

Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule." Robert G. Harris & Lawrence A. Sullivan, Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis, 128 U. PA. L. REV. 268, 275 (1979).

51.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for  Information and Computer Science and Professor of Economics and Public Policy at the  University of Michigan), an expert who presented evidence in a number of the indirect purchaser  cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the
> overcharge will be passed on by distributors to end consumers. When the
> distribution markets are highly competitive, as they are here, all or nearly the
> entire overcharge will be passed on through to ultimate consumers…  Both
> of Microsoft's experts also agree upon the economic phenomenon of cost
> pass through, and how it works in competitive markets.  This general
> phenomenon of cost pass through is well established in antitrust laws and
> economics as well.

Order re: Class Certification at 13-14, Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases, No. J.C.C.P. No. 4106 (Cal. Sup. Ct. Aug. 29, 2000).

52.    Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of an upstream price increase on product prices down the chain of distribution.

12

CLASS ACTION COMPLAINT

53.    Defendants' overcharges impacting the prices of packaged seafood products through the chain of their distribution can be measured and quantified. Commonly used and well accepted economic models can be used to measure both the existence and the amount of the supra-competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiff and the members of the Classes can be quantified.

**F.    The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover His Claims.**

54.    Plaintiff and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until shortly before this litigation commenced.

55.    Plaintiff and the members of the Classes are consumers who purchased packaged seafood products. They had no direct contact or interaction with the Defendants and had no means from which they could have discovered the combination and conspiracy described in this Complaint prior to shortly before this litigation was commenced.

56.    No information in the public domain was available to Plaintiff and the members of the Classes prior to public disclosure of the DOJ's investigation of the packaged seafood product industry, which only recently revealed sufficient information to suggest that the Defendants were involved in a conspiracy to fix prices for packaged seafood products.  Plaintiff and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with direct purchasers of such products, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

57.    For these reasons, the statute of limitations as to Plaintiff's and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and members of the Classes have alleged in this Complaint.

13

**G.     Defendants' Fraudulent Concealment Tolled the Statute of Limitations.**

58.     Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Classes.

59.     Plaintiff and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the law as alleged herein until shortly before this litigation was commenced.  Nor could Plaintiff and the Class members have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. In addition, the conspiracy was by its nature self-concealing.

60.     Defendants engaged in a successful, illegal price-fixing conspiracy with respect to packaged seafood products, which they affirmatively concealed, in at least the following respects:

a.     By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme, and by agreeing to expel those who failed to do so; and

b.     By agreeing on other means to avoid detection of their illegal conspiracy to fix the prices of packaged seafood products.

61.     As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Classes assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and members of the Classes.

**CLASS ACTION ALLEGATIONS**

62.     Plaintiff brings this action on his own behalf and as a class action pursuant to  Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking equitable and injunctive relief on behalf of the following Class (the "Nationwide

14

Class"):

> All individuals and entities that indirectly purchased packaged seafood products for their own use and not for resale within the United States, its territories and the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

63.     Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following classes (the "Damages Classes"):

> All individuals and entities that indirectly purchased packaged seafood products for their own use and not for resale in the Indirect Purchaser States[1] from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

64.     The Nationwide Class and the Damages Classes are referred to herein as the "Classes."

65.     Due to the nature of the trade and commerce involved, Plaintiff believes that Class members are sufficiently numerous and geographically dispersed throughout the United States, its territories and the District of Columbia so that joinder of all Class members is impracticable.

66.     The Indirect Purchaser States are the states listed in Counts II and III,

---

[1] The Indirect Purchaser States are the states listed in Counts II and III, and each state class comprises individuals and entities that have made indirect purchases of Defendants' packaged seafood products in the state.

CLASS ACTION COMPLAINT

and each state class comprises individuals and entities that have made indirect purchases of Defendants' packaged seafood products in the state.

67.     There are questions of law and fact which are common to the claims of Plaintiff and the Classes, including, but not limited to:

a.     Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for packaged seafood products;

b.     Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, and/or maintain the prices for packaged seafood products;

c.     The existence and duration of the horizontal agreements alleged herein to fix, raise, maintain, and/or stabilize the prices for packaged seafood products;

d.     Whether Defendants violated Sections 1 and 3 of the Sherman Act (15 §§ 1, 3);

e.     Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees, or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

f.     Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Classes, and, if so, the appropriate measure of damages; and

g.     Whether Plaintiff and members of the Classes are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act.

68.     Plaintiff's claims are typical of the claims of the members of the Classes.

CLASS ACTION COMPLAINT

69.     Plaintiff will fairly and adequately assert and protect the interests of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

70.     Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

71.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

    a.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

    b.     The Classes are readily definable and one for which purchase records should exist.

    c.     Prosecution as a class action will eliminate the possibility of repetitious litigation.

    d.     Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

    e.     Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

73.     This class action presents no difficulties of management that would preclude its maintenance as a class action.

## COUNT I
### Violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3)

74.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

17

**CLASS ACTION COMPLAINT**

75.     Defendants and their co-conspirators engaged in a continuing contract, combination, and conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of packaged seafood products within the United States, its territories, and the District of Columbia in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

76.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by fixing, raising, maintaining, and/or stabilizing at artificial and non-competitive levels, the prices of such packaged seafood products.

77.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain and/or stabilize the price of packaged seafood products.

78.     The illegal combination and conspiracy alleged herein had the following effects, among others:

     a.     The prices charged by Defendants to, and paid by, Plaintiff and members of the Classes for packaged seafood products were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

     b.     Plaintiff and members of the Classes have been deprived of free and open competition in the purchase of packaged seafood products;

     c.     Plaintiff and members of the Classes have been required to pay more for packaged seafood products than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy;

     d.     Competition in the sale of packaged seafood products has been restrained, suppressed or eliminated.

79.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have been injured and damaged in their business and property in an amount to be determined according to proof.

80.     These violations are continuing and will continue unless enjoined by this Court.

81.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT II

### Violation of State Antitrust Statutes

82.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

83.     Plaintiff further alleges as follows:

        a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Arizona.

        b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Arizona; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Arizona Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

        c.      During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

        d.      As a direct and proximate result of Defendants' unlawful conduct, Arizona Purchasers have been injured in their business and property and are threatened with further injury.

        e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§44-1401, *et seq.* 4 Accordingly, Arizona Purchasers seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

84.     In compliance with Arizona's Antitrust Act, Ariz. Rev. Stat. § 44-1415, Plaintiff will mail a copy of this Complaint to the Arizona Attorney General

19

CLASS ACTION COMPLAINT

contemporaneously with its filing.

85.    Plaintiff further alleges as follows:

a.    Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 2005, and continuing thereafter to the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of packaged seafood products at supra-competitive levels.

b.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for packaged seafood products.

c.    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following: (1) fixing, raising, stabilizing and/or maintaining the price of packaged seafood products; and (2) allocating among themselves the production of packaged seafood products.

d.    The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) price competition in the sale of packaged seafood products has been restrained, suppressed and/or eliminated in the State of California; (2) prices for packaged seafood products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of

20

California; and (3) those who purchased packaged seafood products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and California Purchasers have been injured in their business and property in that they paid more for packaged seafood products than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 *et seq.* of the California Business and Professions Code, Plaintiff and the California Purchasers seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

86.     Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in the District of Columbia.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) District of Columbia Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Code, H.R.S. § 480-4.5 Accordingly, Hawaii purchasers seek all forms of relief available under

21

Hawaii Code, H.R.S. § 480-1 *et seq.*

87.     In compliance with Hawaii Rev. Stat. § 480-13.3, Plaintiff will mail a copy of this Complaint to the Hawaii Attorney General contemporaneously with its filing.

88.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Iowa.

b.     Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout the Iowa; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the Iowa; (3) Iowa Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Iowa Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1 *et seq.* Accordingly, Iowa Purchasers seek all forms of relief available under Iowa Code §§ 553.1.

89.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Kansas.

22

CLASS ACTION COMPLAINT

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Kansas; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Kansas Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Kansas Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.* Accordingly, Kansas Purchasers seek all forms of relief available under Kansas Stat. Ann. §§50-101 *et seq.*

90.     Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Maine.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Maine; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Maine Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

d.      As a direct and proximate result of Defendants' unlawful

23

CLASS ACTION COMPLAINT

conduct, members of the Maine Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.* Accordingly, Maine purchasers seek all forms of relief available under Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

91.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Michigan.

b.     Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Michigan; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Michigan Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Michigan Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771 *et seq.* Accordingly, Michigan Purchasers seek all forms of relief available under Michigan Comp. Laws Ann. §§ 445.771 *et seq.*

92.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial

24

CLASS ACTION COMPLAINT

and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Minnesota.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Minnesota Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, members of the Minnesota Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.50 *et seq.*

93.      Accordingly, Minnesota purchasers seek all forms of relief available under Minnesota Stat. §§ 325D.50 *et seq.*

94.      Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Mississippi.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Mississippi Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

25

CLASS ACTION COMPLAINT

c.       During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

d.       As a direct and proximate result of Defendants' unlawful conduct, Mississippi Purchasers have been injured in their business and property and are threatened with further injury.

e.       By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.* Accordingly, Mississippi Purchasers seek all forms of relief available under Mississippi Code Ann. §75-21-1 *et seq.*

95.      Plaintiff further alleges as follows:

a.       Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Nevada.

b.       Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Nevada; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Nevada Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.       During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

d.       As a direct and proximate result of Defendants' unlawful conduct, Nevada Purchasers have been injured in their business and property and are threatened with further injury.

e.       By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A *et seq.*6 Accordingly, Nevada Purchasers seek all forms of relief available under Nevada Rev. Stat. Ann. §§ 598A *et seq.*

26

CLASS ACTION COMPLAINT

96. In compliance with the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. Ann. § 598A.210(3), Plaintiff will mail a copy of this Complaint to the Nevada Attorney General contemporaneously with its filing.

97. Plaintiff further alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New Mexico.

b. Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) New Mexico Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, New Mexico Purchasers have been injured in their business and property and are threatened with further injury.

e. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 *et seq.* Accordingly, New Mexico Purchasers seek all forms of relief available under New Mexico Stat. Ann. §§ 57-1-1 *et seq.*

98. Plaintiff further alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New York.

b. Defendants' combinations or conspiracies had the following

27

CLASS ACTION COMPLAINT

effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout New York; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) New York Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, New York Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New York General Business Law § 340 *et seq.* Accordingly, New York Purchasers seek all forms of relief available under New York G.B.L. § 340 *et seq.*

99.     In accordance with New York G.B.L. § 340.5, Plaintiff will mail a copy of this Complaint to the New York Attorney General contemporaneously with its filing.

100.    Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in North Carolina.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) North Carolina Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct

28

substantially affected North Carolina commerce.

      d.    As a direct and proximate result of Defendants' unlawful conduct, North Carolina Purchasers have been injured in their business and property and are threatened with further injury.

      e.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1 *et seq.* Accordingly, North Carolina Purchasers seek all forms of relief available under North Carolina Gen. Stat. §§ 75-1 *et seq.*

101.   Plaintiff further alleges as follows:

      a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in North Dakota.

      b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) North Dakota Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

      c.    During the Class Period, Defendants' illegal conduct substantially affected North Dakota commerce.

      d.    As a direct and proximate result of Defendants' unlawful conduct, North Dakota Purchasers have been injured in their business and property and are threatened with further injury.

      e.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 *et seq.* Accordingly, North Dakota Purchasers seek all forms of relief available under North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

102.   Plaintiff further alleges as follows:

CLASS ACTION COMPLAINT

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in South Dakota.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) South Dakota Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, South Dakota Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 *et seq.* Accordingly, South Dakota Purchasers seek all forms of relief available under South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

103.   Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Tennessee.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Tennessee Purchasers paid

30

CLASS ACTION COMPLAINT

supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Tennessee Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.* Accordingly, Tennessee Purchasers seek all forms of relief available under Tennessee Code Ann. §§ 47-25-101 *et seq.*

104.    Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Vermont.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Vermont; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Vermont Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Vermont Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.* Accordingly, Vermont Purchasers seek all forms of relief available

31

under Vermont Stat. Ann. 9 §§ 2453 *et seq.*

105. Plaintiff further alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in West Virginia.

b. Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) West Virginia Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c. During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, West Virginia Purchasers have been injured in their business and property and are threatened with further injury.

e. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1 *et seq.* Accordingly, West Virginia Purchasers seek all forms of relief available under West Virginia Code §§ 47-18-1 *et seq.*

106. Plaintiff further alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Wisconsin.

b. Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) packaged seafood

32

product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.   During the Class Period, Defendants' illegal conduct substantially affected Wisconsin commerce.

d.   As a direct and proximate result of Defendants' unlawful conduct, Wisconsin Purchasers have been injured in their business and property and are threatened with further injury.

e.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

107.   Accordingly, Wisconsin Purchasers seek all forms of relief available under Wisconsin Stat. §§133.01 *et seq.*

## COUNT III

### State Consumer Protection and Unfair Competition Statutes

108.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

109.   Plaintiff further alleges as follows:

a.   Beginning on a date unknown to Plaintiff, but at least as early as January 1, 2005, and continuing thereafter to the present, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

b.   This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

c.   The Defendants' conduct as alleged herein violated Section

33

17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

d.      Defendants' acts, omissions, misrepresentations, practices and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; Defendants' act and practices are unfair to consumers of packaged seafood products in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and e. Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

e.      California Plaintiff and each of the California Purchasers members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

f.      The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

g.      The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and California Purchasers to pay supra-competitive and artificially-inflated prices for packaged seafood products. Plaintiff and California Purchasers suffered injury in fact and lost money or property as a result of

34

such unfair competition.

h.     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

i.      As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.

j.      Plaintiff and the  California Purchasers are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to California Business & Professions Code §17200 *et seq.*

110.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Florida.

b.     The foregoing conduct constitutes "unfair methods of competition," and "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Florida Stat. § 501.204.

c.     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

d.     Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Florida; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Florida Purchasers were deprived of free and open competition; and (4) Florida Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

e.     As a direct and proximate result of Defendants' conduct,

35

CLASS ACTION COMPLAINT

Florida Purchasers have been injured and are threatened with further injury.

f.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201 *et seq.*, and accordingly, Florida Purchasers seek all relief available under that statute.

111.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Hawaii.

b.     The foregoing conduct constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Hawaii Rev. Stat. § 480-2.

c.     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d.     Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Hawaii Purchasers were deprived of free and open competition; and (4) Hawaii Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

e.     As a direct and proximate result of Defendants' conduct, Hawaii Purchasers have been injured and are threatened with further injury.

f.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480-2. Accordingly, Hawaii Purchasers seek all relief available under Hawaii Rev Stat. § 480 *et seq.*

112.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or

36

commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Nebraska.

b.      The foregoing conduct constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Neb. Rev. Stat. § 59-1602.

c.      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

d.      Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Nebraska Purchasers were deprived of free and open competition; and (4) Nebraska Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

e.      As a direct and proximate result of Defendants' conduct, Nebraska Purchasers have been injured and are threatened with further injury.

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601 *et seq.*, and accordingly, Nebraska Purchasers seek all relief available under that statute.

113.   Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New Mexico.

b.      Defendants also took efforts to conceal their agreements from New Mexico Purchasers.

CLASS ACTION COMPLAINT

c.     The foregoing conduct constitutes "unfair or deceptive trade practices" and "unconscionable trade practices in the conduct of any trade or commerce" within the meaning of New Mexico Stat. § 57-12-3, in that such conduct resulted in a gross disparity between the value received by New Mexico Purchasers and the prices paid by them for packaged seafood products as set forth in New Mexico Stat. § 57-12-2E.

d.     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.     Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) New Mexico Purchasers were deprived of free and open competition; and (4) New Mexico Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

f.     As a direct and proximate result of Defendants' conduct, New Mexico Purchasers have been injured and are threatened with further injury.

g.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1 *et seq.*, and accordingly, New Mexico Purchasers seek all relief available under that statute.

114.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New York.

b.     Defendants also took efforts to conceal their agreements from New York Purchasers.

c.     Defendants' illegal conduct substantially affected New York

38

commerce and consumers.

        d.     The conduct of Defendants as described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

        e.     As consumers, New York Purchasers were targets of the conspiracy.

        f.     Defendants' secret agreements as described herein were not known to members New York Purchasers.

        g.     Defendants made public statements about the price of packaged seafood products that Defendants knew would be seen by New York Purchasers; such statements either omitted material information that rendered these statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for packaged seafood products; and, Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

        h.     Because of Defendants' unlawful trade practices in the State of New York, there was a broad impact on New York Purchasers who indirectly purchased packaged seafood products.

115.   Plaintiff further alleges as follows:

        a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in North Carolina.

        b.     Defendants also took efforts to conceal their agreements from North Carolina Purchasers.

        c.     The conduct of Defendants as described herein constitutes

39

consumer-oriented deceptive acts or practices within the meaning of North Carolina Gen. Stat. §75-1.1 *et seq.*, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

      d.    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

      e.    Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) North Carolina Purchasers were deprived of free and open competition; and (4) North Carolina Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

      f.    As a direct and proximate result of Defendants' conduct, North Carolina Purchasers have been injured and are threatened with further injury.

      g.    During the Class Period, each of the Defendants named herein, directly or indirectly through affiliates they dominated and controlled, manufactured, sold and/or distributed packaged seafood products in North Carolina.

      h.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1 *et seq.*, and accordingly, North Carolina Purchasers seek all relief available under that statute.

116.   Plaintiff further alleges as follows:

      a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Vermont.

CLASS ACTION COMPLAINT

b.     Defendants deliberately failed to disclose material facts to Vermont Purchasers concerning Defendants' unlawful activities and artificially inflated prices for packaged seafood products. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants packaged seafood product prices were competitive and fair.

c.     Because of Defendants' unlawful and unscrupulous trade practices in Vermont, Vermont Purchasers who indirectly purchased packaged seafood products were misled or deceived to believe that they were paying a fair price for packaged seafood products or that the price increases for packaged seafood products were for valid business reasons.

d.     Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Vermont; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Vermont Purchasers were deprived of free and open competition; and (4) Vermont Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

e.     As a direct and proximate result of Defendants' illegal conduct, Vermont Purchasers suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.     Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. Title 9, § 2451 *et seq.*, and accordingly, Vermont Purchasers seek all relief available under that statute.

41

**COUNT IV**

**Unjust Enrichment and Disgorgement of Profits**

117.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

118.   Defendants have been unjustly enriched through overpayments by Plaintiff and the Class members and the resulting profits.

119.   Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by class members in the following states: Arizona, California, District of Columbia, Iowa, Maine, Michigan, New Mexico and South Dakota.

120.   Plaintiff and the class members in each of the states listed above seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and the Class members may seek restitution.

**PRAYER FOR RELIEF**

121.   WHEREFORE, Plaintiff prays:

A.   That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Classes;

B.   That the Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.   That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Classes;

D.   That the Court award Plaintiff and the Classes treble damages;

E.   That the Court award Plaintiff and the Classes attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law;

F.   That Defendants and their co-conspirators, their respective successors,

42

**CLASS ACTION COMPLAINT**

assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

       G.    That the Court award Plaintiff and the Class members such other and further relief as may be deemed necessary and appropriate.

## DEMAND FOR JURY TRIAL

      Plaintiff requests a jury trial on all matters so triable.

DATED: September 10, 2015        Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: <u>/s/ Rosemary M. Rivas</u>
     Rosemary M. Rivas
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
rrivas@finkelsteinthompson.com

Douglas G. Thompson
Michael G. McLellan
**FINKELSTEIN THOMPSON LLP**
1077 30th Street NW, Suite 150
Washington DC, 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
dthompson@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com

*Counsel For Plaintiff Rick Musgrave*

CLASS ACTION COMPLAINT